# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | ) |
| MICHAEL E. MANSEL, | ) Case No. 19-10761-JDW |
| Debtor. | ) |
| | ) |
| PIGGLY WIGGLY ALABAMA DISTRIBUTING COMPANY, INC., | ) |
| Plaintiff, | ) A.P. No. _____ |
| v. | ) |
| MICHAEL E. MANSEL, | ) |
| Defendant. | ) |

## COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF A DEBT

**COMES NOW**, the plaintiff, Piggly Wiggly Alabama Distributing Company, Inc. ("Plaintiff") and for its Complaint against Michael E. Mansel ("Debtor"), hereby states as follows:

### PARTIES

1. Plaintiff is an Alabama corporation and a creditor of Debtor.

2. Debtor is an individual who filed a Voluntary Petition for Relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") on February 22, 2019.

### JURISDICTION AND VENUE

3. Plaintiff is objecting to the dischargeability of the Debtor's debt to Plaintiff under 11 U.S.C. § 523. Plaintiff further seeks a determination of the amount of the debt and a judgment for said debt against the Debtor.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

5. Venue is proper for this action under 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicate for relief is 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6).

## FACTS COMMON TO ALL COUNTS

7. Upon information and belief, Debtor is the sole shareholder and principal of M.E.M., Inc., a Mississippi corporation ("M.E.M.").

8. Until January of 2019, M.E.M. operated a Piggly Wiggly grocery store in New Albany Mississippi.

9. From May of 2008 until January of 2019, Plaintiff supplied M.E.M. with inventory and related products on credit for resale at its grocery store.

10. To secure M.E.M.'s obligation to repay Plaintiff for the inventory advancements, Debtor, on behalf of M.E.M., executed a Security Agreement dated May 8, 2008 (the "Security Agreement"), which granted Plaintiff a security interest in substantially all of the assets of M.E.M., including its inventory. A copy of the Security Agreement is attached hereto as **Exhibit "A."**

11. Plaintiff perfected its security interest in the assets of M.E.M. by the filing of a UCC-1 Financing Statement with the Mississippi Secretary of State in File Number 20080111430A (the "Financing Statement"), which Financing Statement has been renewed by Financing Statement Amendments at File Numbers 20131039343B and 20182617582B (the "Amendments"). A copy of the Financing Statement with the Amendments is attached hereto as **Exhibit "B."**

12. M.E.M. defaulted on its monetary obligations to Plaintiff.

13. On January 7, 2019, Plaintiff gave written notice of default (the "Demand Letter") to M.E.M., declaring M.E.M.'s debt in the amount of $583,870.04 immediately due and payable and demanding payment. A copy of the Demand Letter with its Federal Express tracking number is attached hereto as **Exhibit "C."**

14. With respect to the inventory collateral, the Demand Letter stated:

> Please be advised that Debtor has pledged all inventory, equipment, merchandise, supplies, goods and materials of every nature used or usable in connection with the Store (the "Collateral") to the Warehouse. Debtor is obligated under the Section 1(b) of the Security Agreement to refrain from moving, removing, or selling any of the Collateral outside of the ordinary course of business without the written consent of the Warehouse. Debtor is advised to segregate and account to the Warehouse for all proceeds of the sale of the Collateral within the ordinary course of business.

15. Debtor personally received and signed for the Demand Letter at 9:18 a.m. on Tuesday, January 8, 2019.

16. After receiving the Demand Letter, Debtor contacted Matthew Peters with Plaintiff. Mr. Peters agreed with Debtor that M.E.M. could hold a going out of business sale the weekend of January 19th, 20th, and 21st and would continue to discount and liquidate Plaintiff's inventory collateral, which Debtor had represented to be about $130,000, until substantially all of the inventory was sold.

17. Debtor agreed that he would cause M.E.M. to pay sales taxes and payroll from the proceeds of the inventory collateral, and would remit the net proceeds to Plaintiff.

18. On Tuesday, January 22nd, Debtor reported to Plaintiff that the inventory liquidation had gone well the prior weekend and that he was running ads that week in an effort to sell the remaining inventory.

19. Despite Debtor obtaining Plaintiff's cooperation for M.E.M. to liquidate its own inventory by giving assurances that he would cause M.E.M. to pay the proceeds of the sale of the inventory collateral to Plaintiff, Debtor stopped responding to Plaintiff's requests for payment of the proceeds and refused to pay the proceeds to Plaintiff.

20. In Debtor's bankruptcy schedules, he reported that M.E.M. had $36,197.78 in its two bank accounts. Even after accounting for discounts and the payroll to liquidate the inventory collateral, this is substantially less than one would expect after the sale of $130,000 of inventory.

### **COUNT I – 11 U.S.C. § 523(a)(2)(A)**

21. Plaintiff adopts and incorporates the allegations stated in the foregoing paragraphs as if fully set forth herein.

22. To the extent that Debtor personally received the proceeds of Plaintiff's collateral or caused it to be paid to anyone other than as agreed, he did so after falsely representing to Plaintiff that he would cause M.E.M. to pay the proceeds of the collateral to Plaintiff.

23. Plaintiff relied on Debtor's representations in not pursuing any other remedies with respect to its collateral.

24. To the extent that Debtor personally received the proceeds of Plaintiff's collateral or caused it to be paid to anyone other than as agreed, the money was obtained using false pretenses, false representations, or actual fraud.

25. As a result, Debtor's debt to Plaintiff should not be discharged.

**WHEREFORE**, Plaintiff requests the Court enter judgment in favor of Plaintiff in the amount of money that Debtor personally received from the proceeds of Plaintiff's collateral or that he caused to be paid other than as agreed, and declare the judgment non-dischargeable under 11

U.S.C. § 523(a)(2)(A). Plaintiff requests such other, further, or different relief as the Court deems just.

## COUNT II – 11 U.S.C. § 523(a)(2)(B)

26. Plaintiff adopts and incorporates the allegations stated in the foregoing paragraphs as if fully set forth herein.

27. As an inducement to provide credit to M.E.M., and to continue to provide credit on an ongoing basis, Debtor executed a Guaranty Agreement dated May 8, 2008 (the "Guaranty") by which he agreed to guaranty the debts of M.E.M. to Plaintiff. A copy of the Guaranty is attached hereto as **Exhibit "D."**

28. In order to demonstrate his creditworthiness as a guarantor, Debtor furnished to Plaintiff statements in writing with respect to his financial condition.

29. Upon information and belief, Debtor's written statements regarding his financial condition were materially false and were given to Plaintiff with the intent to deceive Plaintiff as to his creditworthiness.

30. Plaintiff reasonably relied on Debtor's written statements regarding his financial condition.

31. After the cancellation of M.E.M.'s 240 shares of common stock in Plaintiff and cancellation of M.E.M.'s $35,705.27 of patronage notes otherwise due M.E.M. from Plaintiff, M.E.M.'s indebtedness to Plaintiff is $443,895.75, exclusive of accruing interest and attorney's fees.

32. Pursuant to the terms of the Guaranty, Debtor is personally liable to Plaintiff for the full $443,895.75 of M.E.M.'s debt to Plaintiff.

33. In the Demand Letter, Plaintiff demanded payment by Debtor under the Guaranty.

34. Debtor has breached the Guaranty by not providing payment and is liable to Plaintiff in the amount of $443,895.75 plus accrued interest and attorney's fees for such breach.

35. Because the extensions and renewals of credit to M.E.M. and Debtor were obtained by Debtor providing materially false financial statements to Plaintiff, Debtor's debt to Plaintiff should not be discharged.

**WHEREFORE**, Plaintiff requests the Court enter judgment in favor of Plaintiff in the amount $443,895.75 plus accrued interest and attorney's fees, and declare the judgment non-dischargeable under 11 U.S.C. § 523(a)(2)(B). Plaintiff requests such other, further, or different relief as the Court deems just.

## COUNT III - 11 U.S.C. §§ 523(a)(4)

36. Plaintiff adopts and incorporates the allegations stated in the foregoing paragraphs as if fully set forth herein.

37. Based on Debtor's representations, Plaintiff entrusted Debtor to liquidate its collateral and pay the proceeds over to Plaintiff.

38. By not causing M.E.M. to pay the proceeds to Plaintiff, Debtor appropriated the property for a use other than that for which it was entrusted.

39. The circumstances surrounding Debtor's wrongful appropriation indicate fraud.

40. To the extent that Debtor personally received the proceeds of Plaintiff's collateral or caused it to be paid to anyone other than as agreed, the money was obtained by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

41. As a result, Debtor's debt to Plaintiff should not be discharged.

**WHEREFORE**, Plaintiff requests the Court enter judgment in favor of Plaintiff in the amount of money that Debtor personally received from the proceeds of Plaintiff's collateral or that

he caused to be paid other than as agreed, and declare the judgment to be non-dischargeable under 11 U.S.C. § 523(a)(4). Plaintiff requests such other, further, or different relief as the Court deems just.

### COUNT IV - 11 U.S.C. §§ 523(a)(6)

42. Plaintiff adopts and incorporates the allegations stated in the foregoing paragraphs as if fully set forth herein.

43. Debtor intentionally and wrongfully exercised dominion over the proceeds of Plaintiff's collateral in exclusion or defiance of the right of Plaintiff.

44. Debtor intentionally and wrongfully detained the proceeds of Plaintiff's collateral after demand.

45. Debtor's actions constitute the tort of conversion.

46. By causing M.E.M. not to pay the proceeds of the collateral as agreed to Plaintiff, there was and an objective substantial certainty of harm that would come to Plaintiff as a result.

47. Plaintiff has been damaged in the amount of the proceeds of the collateral liquidated, less the payroll necessary to liquidate the collateral and the sales tax due on the sales of the collateral.

48. As a result, Debtor's debt to Plaintiff should not be discharged.

**WHEREFORE**, Plaintiff requests the Court enter judgment in favor of Plaintiff in the amount of the net proceeds that should have been paid over to Plaintiff, and declare the judgment to be non-dischargeable under 11 U.S.C. § 523(a)(6). Plaintiff requests such other, further, or different relief as the Court deems just.

Dated this the 4th day of June, 2019.

          */s/ Thomas A. McKnight, Jr.*
          Thomas A. McKnight, Jr.

**OF COUNSEL:**
Wallace, Jordan, Ratliff & Brandt, L.L.C.
First Commercial Bank Building
800 Shades Creek Pkwy., Ste. 400
Birmingham, Alabama 35209
Phone: (205) 870-0555
Email: tmcknight@wallacejordan.com